Filed 6/30/22  P. v. Romero CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DANIEL SOLORIO ROMERO,<br><br>      Defendant and Appellant. | D079291<br><br><br>(Super. Ct. No. JCF38495) |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, and Matthew Mulford, Deputy Attorneys General, for Plaintiff and Respondent.

Daniel Solorio Romero[1] appeals a final judgment of a joint probation revocation hearing. On appeal, Solorio contends that there is insufficient evidence to show that the trial court adequately warned him of the disadvantages of self-representation such that Solorio did not knowingly and voluntarily waive his constitutional right to appointed counsel. We conclude that the trial court sufficiently warned Solorio of the disadvantages of self-representation and that Solorio knowingly and voluntarily waived his right to appointed counsel. The judgment is affirmed.

I.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2018, Solorio pled no contest to corporal injury upon a spouse after a prior conviction in violation of Penal Code[2] section 237.5, subdivision (a).[3] The court imposed a suspended sentence of four years in state prison and placed him on probation with one year of credit for time served.

In September 2018, December 2018, July 2019, and January 2020, prosecutors filed four separate petitions to revoke Solorio's probation. Solorio admitted to each violation, and the court reinstated his probation each time.

In October 2020, prosecutors filed a fifth revocation petition and later amended the petition to include an allegation that Solorio failed to report a November 2020 arrest for possessing unlawful ammunition. Prosecutors

---

[1] Appellant requests the court refer to him as Solorio, and the briefs refer to him as Solorio. For consistency and clarity, we likewise refer to Appellant as Solorio.

[2] Further section references are to the Penal Code.

[3] The underlying facts of the conviction are not relevant to this appeal.

separately charged Solorio for the unlawful possession of ammunition in violation of section 30305, subdivision (a)(1). The probation revocation hearing, case No. JCF38495 (the "probation case"), the preliminary hearing on the ammunition charge, case No. JCF004459 (the "ammunition case"), and a separate felony case against Solorio, case No. JCF003657 (the "felony case"), proceeded together.

Prior to the joint hearing, Solorio claimed that one of his attorneys had a conflict of interest and twice requested a *Marsden*[4] motion. The court held two *Marsden* hearings and twice denied the motion.

On June 23, 2021, after the court denied Solorio's second *Marsden* motion, Solorio asked to represent himself "on all cases." The court initially denied the *Faretta*[5] request for untimeliness. However, the court reconsidered Solorio's *Faretta* request when it postponed the preliminary hearing due to the absence of subpoenaed witnesses. The court asked Solorio if he would be ready for a preliminary hearing in two days, and Solorio replied, "If I'm representing myself, yes." The court told Solorio's lawyers, "If you can get him to fill out a *Faretta* waiver, we'll go from there."

At the next hearing on June 25, 2021, the court received a single *Faretta* waiver from Solorio, and the court emphasized it "applies to both cases." The court again asked if Solorio wanted to represent himself, and he informed the court that his family was helping him hire an attorney. When asked if he would prefer for an attorney to represent him, he replied, "If there's no choice, I will represent myself, but as of now I really would like a day or two to get myself a private lawyer." Solorio waived his right to a

---

4        *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

5        *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

speedy preliminary hearing to have time to hire counsel or alternatively proceed with the *Faretta* waiver. The court told Solorio, "I'm going to give you the *Faretta* forms right now, but hold on to them. Don't get rid of them. If you need them again, we're going to need to know that."[6]

On July 9, 2021, the court held the joint hearing but trailed the felony case. Solorio wanted to renew his *Faretta* motion. The court stated, "Mr. Solorio, you know your rights regarding *Faretta*. It's not advisable, but if you want to represent yourself, you have that right." The court asked Solorio if he still wanted to represent himself, and Solorio said that he did.

The court granted the request. It asked Solorio if he understood that he was representing himself during the preliminary hearing and the probation revocation hearing. Solorio replied, "So does that go together with the violation or not?" The court explained that there were two separate cases covered by a single hearing, but that Solorio did not have to represent himself, "in both of them, or any of them." Solorio replied, "I'll do it on my own, Your Honor." The court emphasized that it did not advise self-representation and that it was "an unwise decision." Solorio reiterated that he would represent himself in both cases. The court asked Solorio, "Do you have any questions about your *Faretta* rights that we went over in that other [felony] case? They are the same rights as these two cases[, the probation case and the ammunition case]." Solorio said he was ready to proceed. When Solorio asked to call a witness, the court warned Solorio that one of the risks of self-representation and calling a witness that his former counsel did not subpoena is that Solorio "may not fully appreciate or understand the pitfalls of calling a witness."

---

[6] The *Faretta* form is not in the record. The clerk at the Imperial County Superior Court clerk's office filed a declaration that she could not find it.

4

At the conclusion of the hearing, the court found probable cause for the ammunition charges and found Solorio violated four of five probation violation allegations. As a result, the court revoked Solorio's probation. Later, Solorio asked the court to reinstate the public defender, and the court granted his request.

At sentencing for the probation violation, the court denied Solorio's request for probation, waived formal arraignment for sentencing, and sentenced Solorio to state prison for four years. Additionally, the court ordered Solorio to pay restitution of $300. The prosecutor dismissed the ammunition case and the felony case.

Solorio timely appealed.

## II.

## DISCUSSION

This appeal concerns whether, based on the totality of the record, Solorio knowingly and voluntarily waived his Sixth Amendment right to counsel following sufficient warnings by the trial court about the disadvantages of self-representation. Solorio contends that the trial court omitted various warnings of self-representation typically associated with a valid waiver of appointed counsel such that Solorio did not knowingly and voluntarily waive his right to counsel. Thus, the trial court erred in granting Solorio's waiver. We disagree.

When determining whether a defendant validly waived a right to counsel, we "review the entire record—including proceedings after the purported invocation of the right of self-representation—and determine de novo whether the defendant's invocation was knowing and voluntary." (*People v. Marshall* (1977) 15 Cal.4th 1, 24; *People v. Burgener* (2009) 46

5

Cal.4th 231, 241 (*Burgener*); see also *People v. Bloom* (1989) 48 Cal.3d 1194, 1224 (*Bloom*).)

## A. Legal Principles

In *Faretta,* the United States Supreme Court recognized a defendant's right to waive appointed counsel in favor of self-representation as constitutionally protected by the Sixth Amendment. (*Faretta*, *supra*, 422 U.S. at p. 818.) To obtain a valid *Faretta* waiver, a competent defendant must knowingly, voluntarily, timely, and unequivocally waive his or her right to counsel. (*Id.* at p. 835; *Godinez v. Moran* (1993) 509 U.S. 389, 396; *People v. Lynch* (2010) 50 Cal.4th 693, 721, 722.) Thus, a defendant waiving the right to counsel "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " (*Faretta*, at p. 835.) The knowing and voluntary requirement ensures "the defendant actually *does* understand the significance and consequences of a particular decision." (*Godinez*, at p. 401, fn. 12; see also *Faretta*, at p. 835.) "The test for a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risk and complexities of this particular case." (*Bloom*, *supra*, 48 Cal.3d at p. 1225; *People v. Koontz* (2002) 27 Cal.4th 1041, 1070.) Thus, the trial court need only warn a defendant "in general terms of the most common disadvantages." (*People v. Frederickson* (2020) 8 Cal.5th 963, 1003 (*Frederickson*).) Additionally, "no particular form of warning is required." (*Burgener*, *supra*, 46 Cal.4th at p. 241.)

Although a valid *Faretta* waiver is established from the record as a whole, in *Lopez*, the court set guidelines for warnings that a trial court should

6

use to caution a defendant when the defendant requests a *Faretta* waiver. (*People v. Lopez* (1977) 71 Cal.App.3d 568, 572-573 (*Lopez*).)  A trial court should warn a defendant that:  (1) self-representation is unwise; (2) the defendant is held to the same rules and standards as an attorney; (3) opposing counsel is an experienced professional; and (4) the defendant will not receive special library privileges in connection with his or her defense. (*Ibid*.)  Conversely, a trial court is not required to warn a defendant requesting a *Faretta* waiver that he or she is precluded from appealing based on ineffective assistance of counsel.  (*Bloom, supra*, 48 Cal.3d at p. 1225.)

Some courts hold that a trial court is not constitutionally required to warn a defendant in every case of "all possible penal consequences" from their trial.  (*People v. Bush* (2017) 7 Cal.App.5th 457, 473 (*Bush*); see also *People v. Harbolt* (1988) 206 Cal.App.3d 140, 149-151.)  However, other courts hold that a trial court should advise a defendant of "the maximum punishment" he or she faces.  (*People v. Jackio* (2015) 236 Cal.App.4th 445, 454-455 (*Jackio*); see also *People v. Noriega* (1997) 59 Cal.App.4th 311, 319.)

### B.  Analysis

Despite a less formal colloquy and the absence of a standard *Faretta* waiver form in the record, the record as a whole reflects a valid waiver.

First, the record reflects Solorio made a voluntary decision regarding *Faretta* because he repeatedly requested and affirmed his desire to represent himself on three separate occasions during the June 23, 2021, June 25, 2021, and July 9, 2021 hearings.  Prior to requesting a waiver, Solorio requested two *Marsden* hearings because he did not want his counsel.  The effort he undertook to remove counsel further shows the voluntariness of his waiver. The court ensured that Solorio knew he would be representing himself in both the probation case and the ammunition case, and Solorio unequivocally

7

agreed to "do it on [his] own." Therefore, Solorio knew the extra responsibility he gained when representing himself in the probation case and the ammunition case.

Second, the trial court did not "simply den[y] or grant[ ]" Solorio's request for self-representation. (See *People v. Truman* (1992) 6 Cal.App.4th 1816, 1824.) Rather, the court engaged in discussions with Solorio regarding his *Faretta* rights over multiple hearings that provided both explicit and implicit warnings of the dangers of self-representation. For example, the court told Solorio that he did not advise self-representation and that it was "an unwise decision." Although a *Faretta* form was not in the record, on June 25, 2021, the court received a single *Faretta* form that applied "to both cases." At the July 9, 2021 hearing, the court also referred to Solorio's *Faretta* rights, which it had detailed "in the other case," suggesting that the trial court gave Solorio *Faretta* warnings in the felony case and that Solorio understood those warnings. The court further confirmed this understanding by reminding Solorio that he knew his rights regarding *Faretta*. The court's references to Solorio's *Faretta* rights in the felony case and his apparent understanding of those rights support the conclusion that Solorio knowingly and voluntarily waived his right to counsel in the ammunition case and the probation case.

Despite the court not providing some *Lopez* warnings verbatim, the trial court's implicit references to *Faretta* warnings follows *Burgener*'s acknowledgement that a less formal colloquy can be appropriate. In *Burgener*, the court recognized that when a defendant requests to represent themselves, some circumstances may justify "a less searching or formal colloquy." (*Burgener*, *supra*, 46 Cal.4th at p. 242 [finding that the trial court's emphasis on the benefits of self-representation alone during the court's reconsideration of an application to modify a verdict was not a

8

sufficient colloquy]; see also *Patterson v. Illinois* (1988) 487 U.S. 285, 299 [finding that a limited inquiry into a defendant's request for self-representation is permitted at the post indictment stage].)  A less formal colloquy was appropriate considering Solorio's understanding of *Faretta* in the context of the felony case and his history of probation revocation hearings.

In addition to this less formal colloquy, the judge supplemented these discussions with explicit admonishments that he did not advise self-representation and that it was "an unwise decision," both warnings that clearly follow the *Lopez* guidelines.  (*Lopez, supra*, 71 Cal.App.3d at pp. 572-573; *People v. Daniels* (2017) 3 Cal.5th 961, 975.)  The court also explicitly warned Solorio about the risk of calling a witness as a self-represented defendant.

Third, the court inquired and subsequently granted Solorio's waiver in the context of a joint hearing that included his fifth probation revocation hearing.  In *Frederickson*, the court found the trial court's inquiry into a defendant's request for a *Faretta* waiver sufficient in part because the defendant told the court he had been involved in several cases and had previously represented himself in them.  (*Frederickson, supra*, 8 Cal.5th at p. 1004.)  Although the record does not indicate that Solorio represented himself previously as in *Frederickson*, Solorio was familiar with the criminal justice system and he knew his *Faretta* rights through the felony case.  This further shows that Solorio knew the disadvantages of self-representation, and thus he knowingly and voluntarily waived his right to counsel.

Finally, if the court were required to ensure Solorio knew the maximum possible punishment (see *Jackio, supra*, 236 Cal.App.4th at p. 455; but see *Bush, supra*, 7 Cal.App.5th at p. 473), because of Solorio's previous

9

no-contest plea and four prior probation revocation hearings, Solorio was aware of the upper term punishment of four years. Thus, Solorio knew the maximum punishment he faced, and a warning on this matter was not required.

Independently examining the record as a whole, we conclude the trial court adequately warned Solorio of the disadvantages of self-representation such that Solorio knowingly, voluntarily, and intelligently waived his constitutional right to appointed counsel. The trial court did not err by granting Solorio's *Faretta* waiver.

## DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:



O'ROURKE, J.



BUCHANAN, J.

10